UNITED STATES OF AMERICA
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.

STEVEN J. SANTUCCI,
ALEX E. KENYHERCZ,
MARK BERTANZA,
JASON CHICKOS,
JEFFREY GENTILE,
FRANK PECORA,
MICHAEL MASE,
STEVEN FERNANDES

**TO BE FILED UNDER SEAL**

Misc. No.:

Date: April 29, 2015

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINTS AND SEARCH WARRANTS

I, Dana Mofenson, a Special Agent of the Drug Enforcement Administration ("DEA"), New Haven District Office, being duly sworn, depose and state the following:

## I.   Introduction

1.    I am employed as a Special Agent with the Drug Enforcement Administration ("DEA") and have been so employed since August 2004. Since becoming a Special Agent, I have participated in numerous criminal investigations, including investigations into suspected drug trafficking.

2.    I am currently assigned to the DEA Tactical Diversion Squad ("TDS"), which investigates those drug traffickers and organizations responsible for diverting and distributing pharmaceuticals and other drugs within the State of Connecticut. During my assignment to the DEA TDS, and previous assignment with the DEA High Intensity Drug Task Force, I have prepared numerous affidavits in support of applications for federal search warrants and arrest warrants, as well as in support of authorizations to conduct electronic surveillance. As a case

agent, I have directed and coordinated electronic surveillance, controlled purchases of drugs, physical surveillance, undercover activities as well as debriefed and managed confidential sources.

3.     I am one of the case agents directing the investigation into members of a steroid importation, manufacturing and trafficking organization, the head of which is a law enforcement official and includes other law enforcement officers, government officials and body builders in Connecticut, and elsewhere, for violations of Title 21, United States Code, Section 846 (Conspiracy to Possess with Intent to Distribute, Distribution and/or Manufacture of Controlled Substances); Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Distribute and Distribution of Narcotics), Title 21, United States Code, Section 843(b) (Use of a Communication Facility to Facilitate a Narcotics Trafficking Felony), Title 21, United States Code, Section 952 (Importation of Controlled Substances), Title 18 United States Code, Section 1956(h) (Conspiracy to Launder Monetary Instruments), and Title 18, United States Code, Section 2320(a)(4)(Trafficking in Counterfeit Goods). I have participated fully in this investigation and, as a result of my participation and information received from other law enforcement officers, I am thoroughly familiar with the circumstances of the investigation and the information set forth in this affidavit. I have also received information related to this matter from the Department of Homeland Security ("HSI"), the United States Marshals Service ("USMS"), the Federal Bureau of Investigations ("FBI"), and other municipal police departments.

4.     I have participated fully in this investigation and, as a result of my participation and information received from other law enforcement officers, I am thoroughly familiar with the circumstances of the investigation and the information set forth in this affidavit.

5.     The statements contained in this affidavit are based on: (1) my personal participation in the investigation; (2) information provided to me by Special Agents of the DEA, HSI, FBI, USMS and by detectives and officers of other law enforcement agencies; (3) information provided by confidential informants, cooperating witnesses and other sources of information; (4) call detail record and pen register analysis; (5) physical surveillance; (6) controlled purchases of drugs; (7) consensual recordings; (8) the interceptions of wire communications pursuant to judicial authorization, in addition to the electronic communications already intercepted pursuant to judicial authorization, and (9) my experience and training. Unless otherwise indicated, all conversations and statements described in this affidavit are related in substance and part and, where applicable, are based on draft transcripts. Because this affidavit is being submitted for the limited purpose of securing authorization for the interception of wire communications I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are essential to establish the foundation to support the issuance of arrest and search warrants for the individuals and locations identified herein.

6.     I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

7.     Based upon the facts set forth below, and as a result of my personal participation in this investigation, I submit that there exists probable cause to believe, and I do believe, that STEVEN SANTUCCI, ALEX KENYHERCZ, MARK BERTANZA, JASON CHICKOS, JEFFREY GENTILE, MICHAEL MASE, FRANK PECORA, STEVEN FERNANDES and

others have committed violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and 846 (Conspiracy to Distribute and to Possess with Intent to Distribute Narcotics) and Title 21, United States Code, Section 843(b) (Use of a Communication Facility to Facilitate a Narcotics Trafficking Felony).  Because this affidavit is being submitted for the limited purpose of securing criminal complaints and arrest warrants, I have not included each and every fact regarding this investigation. Rather, I have set forth only the facts necessary to establish probable cause.

**II.    Background**

8.    The investigation began with an anonymous letter that described the steroid manufacture and distribution of a drug trafficking organization (DTO) the head of which was Newtown Police Department Sergeant Steven SANTUCCI.  The letter was accompanied by a sample of SANTUCCI's steroids.  The initial phase of the investigation focused on certain retail re-distributors of SANTUCCI's.  Those re-distributors were investigated and, after being arrested, provided extensive additional information about SANTUCCI's DTO, which enabled investigators to target other re-distributors, Mark BERTANZA and Alex KENYHERCZ, who received controlled substances directly from SANTUCCI.

9.    A DEA cooperating witness (hereafter "CW-1"), at the DEA's direction made multiple controlled purchases of steroids and counterfeit Cialis from BERTANZA, who was supplied by KENYHERCZ.  Using the source information and evidence gained from the controlled steroids purchases, investigators were able to establish probable cause for the issuance of court ordered monitoring of the interceptions BERTANZA's and KENYHERCZ's cellular telephones (hereinafter "the BERTANZA Telephone" and "the KENYHERCZ Telephone") beginning on March 5, 2015. Through the interception of BERTANZA's and KENYHERCZ's

cellular communications, combined with surveillance and other investigative techniques, investigators began to identify several other members of the conspiracy and confirmed that SANTUCCI was their source of supply.

10.     Also through the investigation, investigators learned that SANTUCCI has been paying for and receiving shipments of steroids packaging materials since at least 2011. One source also provided that SANTUCCI has been using a cellular telephone application called WhatsApp to conduct communications about steroids orders with his customers. Legal process served on WhatsApp confirmed that SANTUCCI has had a WhatsApp account since 2011.

11.     With the evidence garnered through the interceptions of communications over the BERTANZA and KENYHERCZ Telephones, combined with other investigative techniques, investigators were able to establish probable cause for the issuance of orders authorizing the interception of communications over SANTUCCI's cellular telephone (hereinafter "the SANTUCCI Telephone") beginning on April 17, 2015. As described in greater detail below, the investigation has culminated with this request for the court to issue arrest warrants for SANTUCCI, KENYHERCZ, BERTANZA, PECORA, CHICKOS, GENTILE, FERNANDES and MASE, and search warrants for the residences of SANTUCCI and KENYHERCZ.

III.    **Description of the Subjects**

12.     STEVEN J. SANTUCCI (hereafter "SANTUCCI") is a sergeant with the Newtown (Connecticut) Police Department. SANTUCCI is an active, full time, law enforcement officer. In addition to his law enforcement activities, SANTUCCI is the head of a steroid drug trafficking organization. These beliefs are based upon: an anonymous letter and samples of liquid steroids from a concerned citizen, 2012 and 2014 documented seizure of steroid packages from China addressed to SANTUCCI's residence by United States Customs and Border

Protection, information from two Cooperating Defendants (CD-1 and CD-2) who purchased steroids from SANTUCCI's organization, pen register data, call detail record, and intercepted telephone and electronic communications.  SANTUCCI imports bulk wholesale steroids in powder and liquid forms from China and other places.  SANTUCCI then manufactures and re-packages the steroids for retail sales in Connecticut.  SANTUCCI processes the raw steroids into capsules and liquid injectable forms for use by body builders, both professional and amateur. SANTUCCI manufactures and distributes wholesale quantities of steroids and is one of the principal targets of the DEA's investigation in this case.  During the course of the investigation, SANTUCCI has been identified as the steroid source of supply for KENYHERCZ. SANTUCCI is 38 years old.  The Connecticut Department of Motor Vehicles ("DMV") lists his address as ⸫ SANTUCCI uses telephone number

13.    Alex E. KENYHERCZ (hereinafter "KENYHERCZ") distributes wholesale quantities of steroids and is a principal target of the DEA's investigation in this case.  This belief is based upon information from CW-1; pen register data and call detail records; DEA surveillance, and intercepted telephone and electronic communications as well as other information developed during this investigation that I have deemed to be accurate and reliable. During the course of the investigation, KENYHERCZ has been identified as the steroid source of supply for BERTANZA. KENYHERCZ is 29 years old.  The Connecticut DMV lists his address as ⸫ On April 19, 2013, KENYHERCZ provided law enforcement with a home address of ⸫ Surveillance has observed KENYHERCZ, as well as a yellow Chevrolet pickup truck used by KENYHERCZ, parked in front of the residence at both , and parked in the driveway

between                                                   .  The investigation has determined that

the residence next to                                    , is the residence of KENYHERCZ's

parents and possible siblings.  As of this date, it is believed that KENYHERCZ has access to

both                                                     .   In addition, it is believed that

KENYHERCZ is the user of telephone number                     .

14.     Mark J. BERTANZA (hereafter "BERTANZA") distributes re-distribution

quantities of steroids, is believed to distribute re-distribution quantities of oxycodone and

Xanax.  During the course of the investigation, BERTANZA has distributed steroids to CW-1 on

multiple separate occasions under the direction and control of the DEA.  BERTANZA is 33

years old.  The State of Connecticut Department of Motor Vehicles ("DMV") lists his address as

.  According to the Connecticut DMV, BERTANZA is

the registered owner of a 2004 Ford F-350 pickup truck, with Connecticut license plate         .

This vehicle is registered to BERTANZA at                                               .

BERTANZA used this vehicle to distribute steroids to CW-1 on six occasions.  Based on the

DMV information as well as surveillance, the DEA has determined that BERTANZA resides at

.  BERTANZA is the user of telephone number

.

15.     Jason A. CHICKOS (hereafter "CHICKOS") cellular telephone was in contact

with SANTUCCI telephone number,                     .  CHICKOS is currently employed by the

Newtown Police Department as a police radio dispatcher.  CHICKOS is a close associate of

SANTUCCI.  According to DEA sources, CHICKOS is a distributor of steroids for SANTUCCI,

purchasing thousands of dollars of steroids at a time.  As noted in greater detail below,

CHICKOS distributes steroids at a fitness club in Fairfield, Connecticut.  DEA has developed

and collected this information and other information that I have deemed to be accurate and reliable.  During the course of the investigation, CHICKOS has been identified as a primary steroid distributor for SANTUCCI.  CHICKOS is 46 years old.  The Connecticut DMV lists his address as                                    .  In addition, it is believed that CHICKOS is the user of telephone number                    .

16.     Jeffrey GENTILE (hereafter "GENTILE") is believed to be employed by the State of Connecticut as a Judicial Marshal.   GENTILE has been intercepted on the KENYHERCZ Telephone,                    .  Telephone and/or text messages between GENTILE and KENYHERCZ reveal that GENTILE purchases steroids from KENYHERCZ.  Intercepted telephone and/or text messages between GENTILE and KENYHERCZ also reveal that GENTILE sells prescription pills, specifically, Roxicodone, Vicodin and Adderall to KENYHERCZ.  GENTILE and KENYHERCZ discuss availability, prices and quantities of illegal drugs.  During the course of the investigation, KENYHERCZ was observed leaving the vicinity of GENTILE's residence following a suspected drug transaction in Ansonia, Connecticut.  GENTILE is 33 years old.  The State of Connecticut DMV lists his address as                                    .  In addition, it is believed that GENTILE is the user of telephone number                    .

17.     Michael D. MASE (hereafter "MASE") is a registered nurse and a body builder.  MASE's telephone was intercepted communicating with Whats App messages with the SANTUCCI telephone number,                    to purchase large amounts of steroids for the purpose of redistribution.  MASE's Facebook profile page has a picture of him shirtless and striking a body building pose.  MASE also posted a video on the internet of himself dead lifting the front end of a vehicle.   MASE is 32 years old.  The State of Connecticut DMV lists his

address as                                          :. In addition, it is believed that

MASE is the user of telephone number                      .

18.    Frank PECORA (hereafter "PECORA") has been intercepted on KENYHERCZ

Telephone,              . Intercepted telephone calls and/or text messages between PECORA

and KENYHERCZ reveal that KENYHERCZ, and associates of KENYHERCZ, purchase

quantities of prescription pills, specifically Roxicodone, Oxycontin, Suboxone and Opana, from

PECORA.  KENYHERCZ and PECORA discuss prices and quantities of drugs and locations to

meet one another. PECORA is 54 years old.  The State of Connecticut DMV lists his address as

                          :. During the course of this investigation, surveillance

has observed PECORA at                                  :. In addition, it is believed that

PECORA is the user of telephone number                 .    .

19.    Steven A. FERNANDES (hereafter "FERNANDES") has been intercepted in text

message communication with the SANTUCCI telephone number,              .. Intercepted

text messages, obtained pursuant to a search warrant issued on February 23, 2015 for text

message content between FERNANDES and SANTUCCI revealed that FERNANDES

frequently purchases large amounts of steroids from SANTUCCI.  FERNANDES is 54 years

old.. The State of Connecticut DMV lists his address as                          ,

         In addition, it is believed that FERNANDES is the user of telephone number          .

## IV.    **Background Information**

20.    On March 3, 2015, the Honorable Janet Bond Arterton, United States District

Judge authorized the interception of wire and electronic communications to and from telephone

number              , bearing IMEI number              , which is serviced by Verizon

Wireless, subscribed to "MARK BERTANZA,

" and primarily utilized by Mark BERTANZA ( the "BERTANZA Telephone") and over telephone number                    , bearing IMSI number                    , which is serviced by Sprint, subscribed to "MATT SNITH                    ," and primarily utilized by Alex KENYHERCZ (the "KENYHERCZ Telephone"). Technical capacity for interceptions was established on March 5, 2015. The BERTANZA Telephone ceased on April 3, 2015. On April 3, 2015, the Honorable Jeffrey Walker Meyer, United States District Judge, entered an Order for the continued interception of wire and electronic communications occurring over the KENYHERCZ Telephone. Interceptions are scheduled to cease on the KENYHERCZ Telephone on May 3, 2015.

21.    On April 17, 2015, the Honorable Janet Bond Arterton, United States District Judge authorized the interception of electronic communications to and from telephone number (                    bearing IMSI number                    which is serviced by Verizon, subscribed to "STEVEN SANTUCCI

," and primarily utilized by Steven SANTUCCI (hereinafter "the SANTUCCI Telephone"). Electronic interceptions are scheduled to cease on May 17, 2015.

22.    On April 23, 2015, the Honorable Charles S. Haight, Senior United States District Judge, entered an Order authorizing the interception of wire a communications occurring over the SANTUCCI Telephone. Technical capacity for interception was established on April 23, 2015 and the first interception occurred on that date. Interceptions are scheduled to cease on May 23, 2015.

## V.    Probable Cause in Support of Arrests and Search Warrants

23.    On August 6, 2014, the DEA and local police executed three State of Connecticut

Search and Seizure Warrants at three residences in Fairfield County. The three warrants yielded thousands of dosage units of steroids both in injectable and capsule forms. In addition, a capsule press machine, glassware, liters of liquid steroids, and raw steroid powder was seized. Three individuals were charged with State of Connecticut Narcotics Violations. Some of the seized steroids had the brand names of "V LABS" and "CROX GEAR."

24.     As a member of the DEA Clandestine Laboratory Team, I know that steroids are often manufactured using chemicals that are not suited for pharmaceutical production. These substances may be stored and manipulated in non-sterile, clandestine laboratories with little or no precautions in place to prevent contamination and dosage consistency. These factors can lead to impurities and metals being introduced into the steroids which may result in infections, dangerous dosage inconsistencies and other health risks.

25.     During September and October 2014, the DEA learned that the source and manufacturer of "V LABS" and "CROX GEAR" steroids was an active Newtown police officer, later identified as Newtown Police Department Sergeant SANTUCCI. SANTUCCI distributed the steroids he manufactured through, among others, KENYHERCZ.

A.     **Controlled Purchases of Steroids**

1.     **Controlled Purchase on November 19, 2014**

26.     On November 19, 2014, the DEA directed CW-1 to contact BERTANZA and to arrange for the purchase of steroids later in the day. CW-1 made contact with BERTANZA and arranged to meet with him around 6:00 p.m. At approximately 5:30 p.m., Special Agent Jon Rubinstein and I met with CW-1 at a pre-arranged meet location. CW-1 stated that he/she had been in contact with BERTANZA and arranged to meet with and purchase from BERTANZA three vials of steroids and pharmaceutical pills. At approximately 5:46 p.m., CW-1 received an

incoming telephone call from BERTANZA using the BERTANZA Telephone.  DEA Agents recorded the telephone call.  During the telephone conversation, CW-1 arranged to meet BERTANZA in the parking lot of a Fitness Edge Club.

27.     At approximately 6:25 p.m., CW-1 purchased for $320 from BERTANZA (1) a glass vial with a yellow-colored top containing yellow-colored liquid and marked in part "CROX GEAR Equipose;" (2) a glass vial with a pink-colored top containing yellow-colored liquid and marked in part "CROX GEAR Sustanon;" (3) a glass vial with a purple colored top containing yellow-colored liquid and marked in part "CROX GEAR Nandrolone Decanote;" (4) a plastic white-colored bottle containing 1 capsule with white-colored powder and marked in part "VLabs Cialis Active ingredient;" (5) 20mg Tadalafil inactive 300mg Dextrose; and (6) a plastic white-colored bottle containing plastic bags and 71 capsules with white-colored powder and marked in part "V Labs Lot 13NF002 Nolvadex 20mg."

**2.     Controlled Purchase on December 2, 2014**

28.     On December 2, 2014, CW-1 again arranged to purchase steroids from BERTANZA.  BERTANZA informed CW-1 he could sell him/her nine vials of steroids and Cialis and Hydrocodone pills.  That same day BERTANZA sold CW-1 (1) four glass bottles with a green-colored top containing yellow-colored liquid, marked in part "ProStock" and "Pro Trenbolone;" (2) three glass bottles with green-colored tops containing yellow-colored liquid, marked in part "Prostock" and "Sustanon" or "Hi Sustanon; (3) two unmarked glass bottles with green and pink-colored tops containing yellow-colored and clear liquids; (4) a plastic white-colored bottle marked in part "VLabs Cialis Active ingredient 20 mg Tadalafil Inactive 300mg Dextrose," which contained seven capsules with white-colored powder; and (5) a plastic orange-colored bottle containing twenty pills, each of which was marked in part "A333"

in exchange for $875.00

### 3.   Controlled Purchase on December 17, 2014

29.    On December 16, 2014 and December 17, 2014, CW-1 contacted BERTANZA over the BERTANZA Telephone and told BERTANZA that he/she had $2,000 with which to purchase steroids.  The two arranged to meet him at 12:30 p.m. at an Edge Fitness gym.  All of the communications were via text message.  On the evening of December 16, 2014, CW-1 sent a text message to the BERTANZA Telephone, "Who is this."  BERTANZA replied, via text, "Mark," and "See u in the morning."  The next day, CW-1 sent a text message to the BERTANZA Telephone, "no prob..ill hit u up once I grab my paper..in a little bit bro."  BERTANZA replied, "I just need a time."  CW-1 texted BERTANZA, "Like 1230 at…[location omitted]..i b there."  BERTANZA replied, "Ok."

30.    At approximately 12:33 p.m., agents and officers observed BERTANZA's 2004 Ford F350 pickup truck, color red, Connecticut registration 6674CD arrive and park next to CW-1's vehicle.  DEA agents observed BERTANZA exit the Ford pickup truck and stand next to the driver side door of CW-1's vehicle. At approximately 12:39 p.m., law enforcement officers observed BERTANZA return to his truck and depart the area.

31.    Agents then met with CW-1, who turned over 25 vials of liquid steroids, which were labeled with the brand name PROSTOCK and were labeled the following: 5 vials labeled Nandrolone Decanoate; 5 vials labeled Boldenone Undecylenate; 5 vials labeled Pro Trenbolone; and 10 vials labeled Testosterone Enanthate.  All 25 vials of liquid steroids were contained within a "zip-lock" type plastic bag further contained within a brown colored "lunch" type paper bag.

32.    On January 20, 2015, at 6:23 p.m., CW-1 sent a text message to the BERTANZA

Telephone, stating "Yo..u around.. wanna talk to ya." Approximately eleven minutes later, CW-1 called the BERTANZA Telephone and then received an incoming telephone call from BERTANZA over the BERTANZA Telephone. The DEA recorded the ensuing telephone conversation. CW-1 stated, "I called the 475 number." BERTANZA replied, "Yeah I forgot to get minutes for it." CW-1 said, "Listen, I'm going to be stacked up for like Friday do you think there is any way you can get me some stuff?" BERTANZA said, "Yeah, it's just that it's going to be ah… it's going to take a few days but yeah… maybe a week… from what I understand I just put an order in about four days ago and I'm told two weeks so… that was four days ago so I could put another order in… he's on vacation…" CW-1 replied, "I'm probably looking at about four grand worth… of oils…" BERTANZA said, "I can definitely yeah." CW-1 said, "I want, I want to sit down and talk to you, you and him talk about like partnering up maybe dropping the price because…" BERTANZA stated, "…the price yes we can probably definitely go down on if the bottle limit is up there…I deal with him... people deal with me... you deal with your people... the pecking order gotta stay the same." CW-1 said, "I got it…" BERTANZA said, "Definitely negotiate…oh god yeah, a hundred percent, we can do anything... been doing it for years."

33.     Based on my training and experience and the information I have learned during the course of this investigation, I believe that, during the above conversation, CW-1 and BERTANZA discussed the details of a pending steroid transaction. CW-1 stated that he/she would have the funds available to purchase approximately $4,000 worth of steroids. BERTANZA stated that he would be able to supply CW-1 with such a quantity of steroids, however, that the source of supply was currently on vacation. CW-1 then spoke with BERTANZA regarding meeting the source of supply so that CW-1 could negotiate a price

directly with the source of supply.  BERTANZA responded that he would not reveal his source, only stating, "I deal with him . . . people deal with me . . . you deal with your people . . . the pecking order gotta stay the same."  BERTANZA also stated that the price per vial of steroid was negotiable and that BERTANZA would speak with the source of supply directly regarding price. BERTANZA also stated that his organization had been selling steroids "for years," which based on my experience and training, review of source information and my review of SANTUCCI's financial records, I believe to mean for a period going back to at least April 2011.  The term "bottle limit" refers to the quantity of bottles, and the phrase "oils" and "stuff" refers to steroids.

34.     Additionally, I have reviewed SANTUCCI's credit card records which show the purchase of international airline tickets and have been in contact with HSI Special Agents. Based on these records and conversations with HSI agents, I am aware that SANTUCCI flew first class to Quito, Ecuador on January 9, 2015 and returned to the United States first class from Lima, Peru on January 24, 2015.

35.     On January 23, 2015, at approximately 2:24 p.m., CW-1 contacted BERTANZA on the BERTANZA Telephone and discussed the wholesale purchase of steroids.  BERTANZA stated that his source of supply had demanded that CW-1 "front" money for the steroids purchase and CW-1 asked to meet the source of supply.  BERTANZA refused but said he would contact his source of supply.

36.     After the telephone call, BERTANZA, utilizing the BERTANZA Telephone, exchanged text messages with CW-1 in which CW-1 described the quantity and type of steroid CW-1 wished to purchase. Both of these text messages were seized pursuant to the search warrant discussed herein.  At approximately 2:37 p.m., CW-1 sent a text message to the BERTANZA Telephone, "10tren\n10 EQ\n20 test|n10 decca."  At approximately 3:09 p.m., the

BERTANZA Telephone texted CW-1, "Prob will b over the next few days." Based on my training and experience and information I have learned during the course of this investigation, I know that CW-1's order ("10tren\n10 EQ\n20 test\n10 decca") was an abbreviation for the following steroids: 10 vials of Trenbolone, 10 vials of Equinone, 20 vials of Testosterone and 10 vials of Deca Durabolin. On January 26, 2015, BERTANZA agreed to sell CW-1 the steroids at a parking lot in Connecticut.

### 4.    Attempted Controlled Purchase on January 26, 2015

37.    On January 26, 2015, at approximately 11:36 a.m., KENYHERCZ sent a text message from the KENYHERCZ Telephone to the BERTANZA Telephone stating: "He said still on pace and every minute he is texting me is time he is making stuff lol." Based on my training and experience, I believe that KENYHERCZ informed BERTANZA that he had spoken to SANTUCCI who believed that he could manufacture steroids ("making stuff") at a rate ("pace") sufficient to provide the quantity discussed with CW-1, but that the time SANTUCCI spent "texting" KENYHERCZ is time he could spend manufacturing the steroids ("making stuff").

38.    During the meeting in the parking lot, BERTANZA advised CW-1 that law enforcement officers may be in the area and agreed to meet CW-1 at another location in Connecticut. At the second location, BERTANZA informed CW-1 that they should meet at a third location in Connecticut, where BERTANZA would meet a "runner" for the steroid source of supply.

39.    At approximately 3:42 p.m., the BERTANZA Telephone sent a text message to the KENYHERCZ Telephone stating, "The longer he takes the more likely this won't happen. This weirdo stretchy." Based on my training and experience, I believe that this text message

involves BERTANZA explaining to KENYHERCZ his concern with the length of time that SANTUCCI was taking to bring the steroids to KENYHERCZ and BERTANZA.

40.     Surveillance was established at the third meeting location and observed KENYHERCZ meet with BERTANZA.  BERTANZA then told CW-1 that the "runner" was going to meet the steroid source of supply.

41.     At approximately 5:08 p.m., KENYHERCZ sent a text message from the KENYHERCZ Telephone to the BERTANZA Telephone stating, "I'm on the phone with him now.  Prius slid off highway on 8 had a tire blow out where he slid."  Based on my training and experience, I believe that KENYHERCZ informed BERTANZA that he was speaking to SANTUCCI and SANTUCCI's Toyota Prius slid off the highway on Connecticut Route 8, which runs north and south and connects Waterbury to the meet location.  I am aware through information provided by CD-1, information from financial records and information from the State of Connecticut DMV that SANTUCCI owns and has registered a white colored 2010 Toyota Prius.

42.     At approximately 5:09 p.m., KENYHERCZ sent a text message from the KENYHERCZ Telephone to the BERTANZA Telephone stating, "He is changing tire he said I could run and meet him in Naugatuck or he said he will front me the product and I can run and drop it off."  Based on my training and experience, KENYHERCZ informed BERTANZA that he had communicated with SANTUCCI, who was changing his tire.  SANTUCCI had informed KENYHERCZ that he could meet him in Naugatuck, or he will loan ("front") KENYHERCZ the steroids to sell ("the product") and KENYHERCZ would drop the steroids off with BERTANZA.

43.     At approximately 6:18 p.m., KENYHERCZ sent a text message from the

17

KENYHERCZ Telephone to the BERTANZA Telephone stating: "Fuck it fuck seriously I can blame Steve I'm driving around in a fucking blizzard BC this kid had to be winey bitch. Dude I can only go so fucking fast." Based on my training and experience, I believe that KENYHERCZ informed BERTANZA that he had not yet reached SANTUCCI ("Steve") because of white-out snow conditions, which were the contemporaneous weather conditions at the time of the text.

44.     BERTANZA's sale to CW-1 did not take place on January 26, 2015.

45.     On January 27, 2015, BERTANZA sent a text message from the BERTANZA Telephone to the KENYHERCZ Telephone stating, "Get the order n I'll tell this dude" and then a few minutes later, BERTANZA sent another text message to KENYHERCZ stating, "I'd say we set up that fagot." Based on my training experience, I believe that BERTANZA told KENYHERCZ to get the steroids from his source of supply ("Get the order") and BERTANZA would tell CW-1 ("the dude") that the transaction could go forward. BERTANZA then suggested to KENYHERCZ that they rob ("set up") CW-1 ("that fagot") of CW-1's money.

**5.     Controlled Purchase on February 3, 2015**

46.     On February 1, 2015, KENYHERCZ sent a text message from the KENYHERCZ Telephone to the BERTANZA Telephone stating: "Anything as far as that. I met Steve I have product. I'm at cousin for Superbowl will be home in am." Based on my training and experience, I believe KENYHERCZ was informing BERTANZA that he had met with SANTUCCI ("Steve") and had enough steroids ("product") to fulfill CW-1's request.

47.     On February 2, 2015, KENYHERCZ sent a text message from the KENYHERCZ Telephone to the BERTANZA Telephone stating: "Get the order n I'll tell this dude. We will have wAitin this time. K" Based on my training and experience, I believe KENYHERCZ directed BERTANZA to get CW-1's order and that he would tell SANTUCCI ("this dude") and

that they would have the steroids ready for delivery at the meeting ("We will have wAitin this time").

48.     On February 3, 2015, CW-1 purchased 50 vials of liquid steroids and 10 Xanax pills from BERTANZA for $3,830.

### 6.     Controlled Purchase on February 20, 2015

49.     On February 20, 2015, CW-1 again purchased six vials of steroids from BERTANZA for $500, including two of which were labeled "V Labs" and "Trenbolone Enanthate" as well as a plastic "zip-lock" type bag contained two bottles labeled "ProStock" and "Pro Trenbolone" and two bottles labeled "ProStock" and "Mastron Enanthate."

### 7.     Controlled Purchase of March 30, 2015

50.     On March 26, 2015, CW-1 sent BERTANZA a text message and arranged to purchase steroids on Monday, March 30, 2015.   BERTANZA, utilizing the BERTANZA Telephone, and  KENYHERCZ, who was utilizing the KENYHERCZ Telephone, beginning in KENYHERCZ Session 9984, engaged in the following text message exchange:

BERTANZA:     I am broke. But if u can get the usual order. I have someone who wants 50 bottles (Session 9984)

KENYHERCZ:     I can put up the cash on Monday but I have to know that the kid is going to take it that day because that's all my cash (Session 9987)

51.     Based on my training and experience, I believe that BERTANZA informed KENYHERCZ that he needed to order 50 bottles of steroids ("50 bottles"), but that BERTANZA did not have cash to pay for the bottles ("I am broke").   KENYHERCZ replied that he could pay for the bottles of steroids ("I can put up the cash on Monday") but wanted to be assured that the purchaser was pay for the purchase that same day ("I have to know that the kid is going to take it that day because that's all my cash").

52. On March 26, 2015, in KENYHERCZ Session 10009, SANTUCCI, utilizing the SANTUCCI Telephone, telephoned KENYHERCZ, who was utilizing the KENYHERCZ Telephone, and engaged in the following conversation:

KENYHERCZ: ...see last order I sent you?

SANTUCCI: A um, I mean I still got it written down. I was just holding on to it to make sure you were coming back and wanted it.

KENYHERCZ: Yeah, well it's the it's the same order it's it's been the last three big orders, 20, 10, and 10. 10, 10, and 10.

SANTUCCI: Yep.

KENYHERCZ: So I'll take that one but I'm gonna need to add a couple miscellaneous but what I wanted to ask you is umm, because what I'm getting paid for the trip down there is I got a, a payroll check coming on Monday for twelve hundred and then I have some extra. I don't know what the total is but if I'm like a 100 short can you live with that for a couple days or for a day.

SANTUCCI: If it's a 100 short I can live with it.

KENYHERCZ: Alright cool, yeah soo um, it'll be 20, 10, 10, and 10, and then I'll probably need to add a couple of just miscellaneous bottles here and there so I'll send those over through the a (UI).

SANTUCCI: Alright I probably won't, I probably won't have it made for tonight, but like I could try for tomorrow.

KENYHERCZ: Well I have the, I have the kid on the hook for, for Monday, that's when I get my payroll check so.

SANTUCCI: Ohh ohh perfect, alright that's even better for me.

KENYHERCZ: So it'll be ready on Monday.

SANTUCCI: Alright no rush.

KENYHERCZ: Alright perfect.

SANTUCCI: Alright so if you think of anything else you need send it over.

KENYHERCZ: Alright man thanks.

SANTUCCI:          Alright welcome back.

KENYHERCZ:      Thank you. Alright talk to you soon '

53.      Based on my training and experience, I believe that in this conversation, KENYHERCZ asks SANTUCCI if he has seen the steroids order he sent SANTUCCI over WhatsApp ("see the last order I sent you?"). SANTUCCI responds that he has not deleted the order ("I still got it written down") but was "holding on to it" in case KENYHERCZ did not return from Tennessee and to make sure he really wanted the order ("I was just holding on to it to make sure you were coming back and wanted it"). KENYHERCZ responds that the order is for 20 bottles of testosterone, 10 bottles of Nandrolone Decanoape, 10 bottles of Boldenone Undecylenate, and 10 bottles of Trembolone, all synthetic steroids that CW-1 had ordered ("20, 10, and 10. 10, 10 and 10"). KENYHERCZ informs SANTUCCI that he was recently paid so that he has $1200, but wonders if it is a problem if he is owes SANTUCCI $100 ("a 100 short"). SANTUCCI agrees and tells KENYHERCZ that he will not have the steroids manufactured that evening, but will have them ready the next day ("I probably won't have it made for tonight, but like I could try for tomorrow"). KENYHERCZ informs him that the deal is set to take place on March 30, 2015 ("Monday").

54.      On March 28, 2015, in KENYHERCZ Session 11082, BERTANZA, utilizing the BERTANZA Telephone, telephoned KENYHERCZ, who was using the KENYHERCZ Telephone, and engaged in the following conversation:

BERTANZA:         What up

KENYHERCZ:      So I have to see Steve for a small order today, I gotta go pick it up now. But are your guys definitely good for Monday?

BERTANZA:         Yeah

KENYHERCZ:      Alright, cause I, I get paid on Mondays so I'll put up the cash for it, and

then uh, you know, you'll just get it back that day like usual so

BERTANZA:       Alright

KENYHERCZ:      Alright, good deal man. Then ummm... yah I got...

BERTANZA:       Alright (talks over KENYHERCZ).  Let me know, I told him I told him uh, he said that he was busy Monday, but if that was the only day I can meet him that he would, he would make, you know, he would do it, so

KENYHERCZ:      What I mean, if Tuesday is better, I mean the only reason um

BERTANZA:       No, the sooner the better... the sooner the better..it's fine

KENYHERCZ:      Yah, the, the only thing is um ...10 of em, Steve is getting the stuff in on Monday.. he has the other 40 ready he is just waiting on the other 10, so that's the only thing, like you know,

BERTANZA:       Say that again ?

KENYHERCZ:      Out of the 50, there's 10 that he doesn't have the stuff for.. but it's coming in the mail tonight, so like I said, but I get paid Monday and I know I can put up my own cash on Monday, so that's why I just made it for Monday

BERTANZA:       Yah, alright, that's ... whatever, just, make it happen

KENYHERCZ:      Alright, you got it... and then I (BERTANZA: all right) (UI) hundred of the other things coming, the blue ones

BERTANZA:       Alright, cool.

55.     Based on my training and experience, I believe that during this telephone conversation, KENYHERCZ relates that he is meeting SANTUCCI to pick up a small order ("I have to see Steve for a small order") and wanted to make sure that CW-1's purchase of steroids was confirmed for March 30, 2015 ("But are you guys definitely good for Monday?"). KENYHERCZ tells BERTANZA that he is purchasing the steroids ("I'll put up the cash for it") and asks if the sale can take place on March 31, 2015 ("Tuesday is better").  BERTANZA replies, "the sooner the better."  KENYHERCZ then tells BERTANZA that of the 50 bottles ("out of the 50"), SANTUCCI does not have the ingredients for 10 bottles ("there's 10 that he

22

doesn't have the stuff for") but that it is coming in the mail "tonight." KENYHERCZ then adds that he has 100 Roxicodone, which I know to be pills containing 30 milligrams of oxycodone, being supplied to him ("hundred of the other things coming, the blue ones").

56.     On March 30, 2015, KENYHERCZ, utilizing the KENYHERCZ Telephone, calls SANTUCCI, who was utilizing the SANTUCCI Telephone, and engages in the following telephone conversation:

SANTUCCI:       Yo.

KENYHERCZ:      Hey, what's happening?

SANTUCCI:       What's up?

KENYHERCZ:      So what I'll do is uh, should I just tell, make it as late as possible then if it happens sooner just ah tell (UI).

SANTUCCI:       I, didn't hear a word you said (laughing).

KENYHERCZ       I said so should tell the kid, maybe like, 10, 10:30, and then if it happens sooner, it happens sooner?

SANTUCCI        (Button on phone is pressed) It doesn't have to be that late even, you, you could say uhhhh, I mean at the latest, I mean I can everything made but the Tren and once I have it in hand ya know, I can knock out the Tren in, one hour, so I would say, you could tell him 7.

KENYHERCZ:      Alright, I'll tell, I'll tell him 7. Alright, that works, and then, I have one more question. Yeah, I still have um, I still have the cash from yesterday and my check, but it still might be like 1 or 2 short, is that okay? I mean you can either wait, I'll run it right back to ya. You'll have the other hundred or two hundred, but I just wanna make sure (UI).

SANTUCCI:       Alright, yeah, if you're one or two short then yea, you'll just have to run it back to me, that's all.

KENYHERCZ       Alright, no problem. You got it. Perfect.

SANTUCCI:       Alrighty, I'll keep you updated all day long.

KENYHERCZ:      Alright man, thank you.

SANTUCCI          Alright, no problem.

KENYHERCZ:          Alright, bye

57.    Based on my training and experience, I believe that during this telephone conversation, KENYHERCZ asks SANTUCCI what time KENYHERCZ should tell his buyer to be available purchase the steroids ("I said so should tell the kid, maybe like, 10, 10:30, and then if it happens sooner, it happens sooner?"). SANTUCCI replies that he should be able to complete the manufacture of the Trenbolone steroids within one hour and tells KENYHERCZ to tell KENYHERCZ's customer to be available at 7:00 p.m. ("It doesn't have to be that late even, you, you could say uhhhh, I mean at the latest, I mean I can everything made but the Tren and once I have it in hand ya know, I can knock out the Tren in, one hour, so I would say, you could tell him 7."). KENYHERCZ tells SANTUCCI that he has some of the money available, however, will be $200 short ("I still have the cash from yesterday and my check, but it still might be like 1 or 2 short, is that okay? I mean you can either wait, I'll run it right back to ya. You'll have the other hundred or two hundred, but I just wanna make sure (UI)." SANTUCCI responds that KENYHERCZ will have to meet with SANTUCCI and provide the remaining funds to SANTUCCI, after KENYHERCZ provides the steroids to his customer ("Alright, yeah, if you're one or two short then yea, you'll just have to run it back to me, that's all")

58.    On March 30, 2015, members of the DEA, FBI and HSI utilized CW-1 to complete the controlled purchase of $3,750 worth of liquid steroids and $250 worth of Cialis from BERTANZA. Prior to the controlled purchase, CW-1 contacted BERTANZA via text message and BERTANZA directed CW-1 to travel to the Griffin Hospital parking lot located in Derby, Connecticut. CW-1 was provided with $5,000 in DEA funds, searched for contraband and unaccounted for monies with negative results and outfitted with a recording device.

Surveillance was then established at the Griffin Hospital parking lot. Surveillance observed SANTUCCI's 2010 Toyota Prius, color white, Connecticut registration 642YBN parked within the lot. CW-1 then traveled to the Griffin Hospital parking lot and parked within the lot. Surveillance then observed SANTUCCI move his vehicle within the lot after CW-1 unwittingly parked directly next to SANTUCCI. Surveillance then observed BERTANZA meet with KENYHERCZ at KENYHERCZ's residence and travel to the same parking lot where CW-1 and SANTUCCI were parked. Upon review of the surveillance video, investigators observed KENYHERCZ walk towards SANTUCCI's vehicle, enter SANTUCCI's vehicle and returned to BERTANZA's vehicle carrying a brown paper bag. BERTANZA and KENYHERCZ then drove across the parking lot to the area where CW-1 was parked. BERTANZA then walked to CW-1's car carrying what appeared to be the same brown paper bag. Bertanza provided CW-1 the brown paper bag, which was found to contain 50 glass bottles of liquid steroids and a bottle of 96 capsules of Cialis. In exchange, CW-1 provided BERTANZA with $4,000. BERTANZA then returned to his vehicle and drove back to the same area where he was originally parked. KENYHERCZ then exited BERTANZA's vehicle and walked back to and entered SANTUCCI's vehicle. KENYHERCZ then walked back to BERTANZA's vehicle carrying a different, white, bag, got back into BERTANZA's vehicle, and the two exited the Griffin Hospital parking lot. SANTUCCI was observed driving away at the same time. Members of DEA then met with CW-1 who turned over the brown paper bag containing the 50 bottles of steroids and Cialis, along with $1,000 in unused DEA funds to investigators.

## B.    Selected Intercepted Communications Among Subjects

59.    As noted above, on March 5, 2015, investigators began monitoring wire and electronic communications over the BERTANZA and KENYHERCZ Telephones. Although the

BERTANZA Telephone ceased on April 3, 2015, interception over the KENYHERCZ Telephone was renewed.   On April 17, 2015, interceptions of electronic communications, including WhatsApp messages, over the SANTUCCI Telephone commenced, and on April 24, 2015, interceptions of wire communications over the SANTUCCI Telephone commenced. During the course of the monitoring, investigators intercepted numerous conversations, both wire and electronic related to narcotics trafficking. A small sampling of conversations is set forth below.   Prior to and during the period of court ordered interceptions, certain communicatons of BERTANZA and SANTUCCI were obtained pursuant to search warrants.

### 1.    **SANTUCCI and CHICKOS**

60.    On February 6, 2015, Jason CHICKOS, using telephone number (203) 993-0921, and SANTUCCI, using the SANTUCCI Telephone, engaged in the following text message exchange:

| | |
|---|---|
| SANTUCCI: | We good to go or need another day |
| CHICKOS: | Gtg. I'm working again tonight |
| CHICKOS: | U working tonight |
| SANTUCCI: | Yes. Have that other thing ready |
| CHICKOS: | K. See yah tonight. I'm on till 11. I'll wait for ya |
| SANTUCCI: | I'll come in early |
| CHICKOS: | K |
| SANTUCCI: | Can you leave it on my desk. Or in my desk? |
| CHICKOS: | Ok. What time u gonna be here |
| SANTUCCI: | I won't be till like after 1130 |
| SANTUCCI: | Oh damn. I forgot your snack. And am running around now. I lol have to run it to you tomorrow. |

SANTUCCI:       So I guess you don't have to leave it. Cause I'll have to see you tomorrow anyway.

CHICKOS:        OK I'm working tmrw again at 3pm. If you're off from work I can meet ya earlier. Gonna leave another envelope on your desk also

SANTUCCI:       Ok. My draw is open

CHICKOS:        Not sure which drawer is yours

SANTUCCI:       My desk draw. First desk on right when you walk in.

CHICKOS:        K

SANTUCCI:       Got it

CHICKOS:        K

61.     Based on my training and experience, the training and experience of other special agents involved in this investigation, and information I have learned during the course of this investigation, I believe that in this text message exchange, SANTUCCI asked CHICKOS if he had the money in exchange for a previous order of steroids ("We good to go or need another day").   CHICKOS responded that he had SANTUCCI's money that he was working at the Newtown Police Department that night ("Gtg. I'm working again tonight"), and asks if SANTUCCI was working at the Newtown Police Department that night as well ("U working tonight"). SANTUCCI told CHICKOS that he would be at the Newtown Police Department that night and that he had CHICKOS' other steroid order ("Yes. Have that other thing ready"). CHICKOS and SANTUCCI exchanged a series of text messages regarding what time they would meet.  SANTUCCI instructed CHICKOS to leave the money for the steroids in his desk ("Can you leave it on my desk. Or in my desk?").   SANTUCCI then apologized for forgetting CHICKOS' steroid order that he previously said he would bring to the Newtown Police Department and that CHICKOS did not have to leave the money in his desk since he did not

have the steroids for him that night ("Oh damn. I forgot your snack. And am running around now. I lol have to run it to you tomorrow. So I guess you don't have to leave it. Cause I'll have to see you tomorrow anyway."). CHICKOS responded that he would see SANTUCCI at work the next day or meet him somewhere else if SANTUCCI was off from working at the Newtown Police Department the following day. CHICKOS also indicated that he would leave SANTUCCI an envelope of money for another steroid order in SANTUCCI's desk drawer ("OK I'm working tmrw again at 3pm. If you're off from work I can meet ya earlier. Gonna leave another envelope on your desk also"). SANTUCCI and CHICKOS exchanged a series of text messages indicating that they understood the previous messages.

      62.     On February 7, 2015, Jason CHICKOS, using telephone number (203) 993-0921, and SANTUCCI, using the SANTUCCI Telephone, engaged in the following text message exchange:

| | |
|---|---|
| CHICKOS: | When u working again |
| SANTUCCI: | Tonight |
| SANTUCCI: | And tomorrow |
| SANTUCCI: | Oh. I I had missing item for today. I'll try for rest tomorrow |
| CHICKOS: | K. |
| CHICKOS: | Also VAVAVA, SUSU, DB, WIWIWIWI |
| CHICKOS: | I'm working at 3pm again tmrw. |
| SANTUCCI: | K. |

      63.     Based on my training and experience, the training and experience of other special agents involved in this investigation, and information I have learned during the course of this investigation, I believe that in this text message exchange, CHICKOS asked SANTUCCI when

he would be working at the Newtown Police Department ("When u working again") and SANTUCCI responded that he was working that night and the following day ("Tonight", "And tomorrow"). SANTUCCI continued that he had the steroids for CHICKOS that he had originally promised him in the text message exchange on February 6, 2015 ("Oh. I I had the missing item for today.") and that he would get CHICKOS the remainder of his steroid order the following day (" I'll try for rest tomorrow"). CHICKOS added Vanazolol, Sustanon, Dianabol, and Winstrol to his previous steroid order ("Also VAVAVA, SUSU, DB, WIWIWIWI"). SANTUCCI responded that he understood CHICKOS' additional steroid order ("K").

64.    On February 13, 2015, Jason CHICKOS, using telephone number (203) 993-0921, sent the following text message to SANTUCCI, using the SANTUCCI Telephone:

CHICKOS:          $2,036.31 + $42.86

65.    Based on my training and experience, the training and experience of other special agents involved in this investigation, and information I have learned during the course of this investigation, I believe that in this text message exchange, CHICKOS sent a message to SANTUCCI that referenced the cost of a drug shipment. This belief is based in part given the context of other text messages referencing quantities of steroids ordered by CHICKOS from SANTUCCI, and the frequency of steroid purchases by CHICKOS from SANTUCCI. Additionally, based on my training and experience, including the nature of purchases CW-1 made through two intermediaries from SANTUCCI that the amount of steroids purchased for $2,000 was not an amount for personal use but for the purpose of redistribution.

66.    On April 3, 2015, Jason CHICKOS, using telephone number (203) 993-0921, sent SANTUCCI, using the SANTUCCI Telephone, the following text messages:

CHICKOS:                TETETETEDCDC. here till 3am

CHICKOS:                Disregard this message. Sent correct from other. Thought I forgot it

67.     Based on my training and experience, the training and experience of other special agents involved in this investigation, and information I have learned during the course of this investigation, I believe that in this text message exchange, CHICKOS was placing an order for steroids, specifically Testosterone and Deca Durabolin ("TETETETEDCDC"), and that the repetition of the abbreviations represents a quantitiy being ordered.  I further believe that after CHICKOS sent the first message, he realized he had already sent that order ("Sent correct from other. Thought I forgot it").

68.     On April 19, 2015, SANTUCCI, using the SANTUCCI Telephone, and Jason CHICKOS, using telephone number (203) 993-0921, exchanged the following text messages:

SANTUCCI:          Headed to pd

CHICKOS:           K (Index Number 14)

CHICKOS:           Here at the golf course. Be here for quite quickly while. (Index Number 16) (11:21 a.m.)

CHICKOS:           I'm working at the golf course now till close (Index Number 22) (2:21 p.m.)

SANTUCCI:          K(Index Number 24) (2:21 p.m.)

SANTUCCI:          What time is close? (Index Number 25) (2:40 p.m.)

CHICKOS:           630 ish (Index Number 26) (3:12 p.m.)

SANTUCCI:          Be there like hour (Index Number 28) (4:32 p.m.)

SANTUCCI:          30 min away (Index Number 29) (4:45 p.m.)

CHICKOS:           K (Index Number 30) (4:53 p.m.)

SANTUCCI:          Pulling in (Index Number 32) (5:11 p.m.)

69.     Based on my training and experience, the training and experience of other special

agents involved in this investigation, and information I have learned during the course of this investigation, I believe that in this text message exchange, that CHICKOS told SANTUCCI that he was working at the Fairchild Wheeler Golf Course ("Here at the golf course. Be here for quite quickly while."). Based on my training and experience, I believe the telephone call from CHICKOS to SANTUCCI, using the SANTUCCI Telephone, was in connection to the meeting discussed in the previous and subsequent text messages. Later that day, DEA Special Agent Mofenson observed CHICKOS working at the Fairchild Wheeler Golf Course. SANTUCCI responded that he would meet CHICKOS at the Fairchild Golf Course ("Be there like hour"). Based on previous text message communication between SANTUCCI and CHICKOS, as well as Source reporting, I believe that CHICKOS and SANTUCCI were communicating regarding an in-person meeting in the furtherance of a steroid transaction.

70.     On April 25, 2015, beginning in SANTUCCI Telephone Session 144 Jason CHICKOS, using telephone number (203) 993-0921 and  SANTUCCI, using the SANTUCCI Telephone, engaged in the following text message exchange:

SANTUCCI:        You working tonight? (Session 144)

CHICKOS:        Yes I'm here now (Session 145)

SANTUCCI:        Ok. Working on it now (Session 146)

CHICKOS:        K. Gonna send you a message in a few (Session 147)

SANTUCCI:        Ok (Session 148)

CHICKOS:        No add ons today (Session 149)

SANTUCCI:        Cool. Thanks (Session 150)

SANTUCCI:        I'll have it but won't be there till 1130 (Session 151)

CHICKOS:        K (Session 152)

SANTUCCI:        Coming across bridge (Session 154)

CHICKOS:          I'm here till 3am (Session 155)

SANTUCCI:         Oh. (Session 156)

71.      Based on my training and experience, the training and experience of other special agents involved in this investigation, and information I have learned during the course of this investigation, I believe that in this text message exchange, that SANTUCCI asked CHICKOS if he was working at the Newtown Police Department that night ("You working tonight?") and CHICKOS confirmed that he was there at the time of the text message conversation ("Yes I'm here"). SANTUCCI continued that he was currently making a steroid order that CHICKOS had previously place ("Ok. Working on it now") and CHICKOS responded that he did not have anything additional to include in the steroid order ("No add ons today"). SANTUCCI indicated that he understood but that he would not have the order completed until 11:30 p.m. CHICKOS indicated that he would be at the police department until three in the morning (I'm here till 3am).

72.      On April 25, 2015, surveillance was established in Newtown, Connecticut. At approximately 11:22 p.m., SANTUCCI's 2010 Toyota Prius was observed traveling on Church Hill Road, Newtown, Connecticut. SANTUCCI was identified walking from the area of the Toyota Prius. At approximately 11:30 p.m., surveillance observed SANTUCCI's 2010 Toyota Prius parking at the Newtown Police Department.  Based on the above reference telephone conversation and the surveillance, I believe that SANTUCCI and CHICKOS completed a steroid transaction at the Newtown Police Department.

73.      Based on my training and experience, the different types of steroids CHICKOS has ordered, the frequency and amount of steroid purchases, and the CHICKOS' use of "add ons" to pre-existing orders, I believe that CHICKOS is purchasing redistribution quantities of steroids from SANTUCCI.

74.    On April 27, 2015, in SANTUCCI Telephone Session 206 Jason CHICKOS, using telephone number (203) 993-0921 and SANTUCCI, using the SANTUCCI Telephone, engaged in the following text message exchange:

SANTUCCI:    Rumors. Of an unknown person falling. Your the only one I couldn't get a hold of.

75.    Based on my training and experience, the training and experience of other special agents involved in this investigation, and information I have learned during the course of this investigation, I believe that in this text message exchange, that SANTUCCI explained to CHICKOS that an unidentified individual ("unknown person") who was arrested ("falling"). I believe SANTUCCI was contacting CHICKOS to verify that CHICKOS had not been arrested ("Your the only one I couldn't get a hold of."). SANTUCCI's concern for CHICKOS' welfare and use of the phrase "only one" shows that CHICKOS is a high-ranking and trusted member of SANTUCCI's steroids distribution organization.

76.    On April 27, 2015, in SANTUCCI Telephone Session 199, a FNU LNU telephone number (203) XXX-2194 and SANTUCCI, using the SANTUCCI Telephone, engaged in the following conversation:

aUP2194:    Ohh. What's up dude?

SANTUCCI:    Ahh, just making some rounds, I heard some rumors, I'm just making sure everybody's all set.

UP2194:    Why, what happened?

SANTUCCI:    I just, heard of, nobody knows anything. Everyone's just saying there was a, little pinch.

UP2194:    There was what? (Talking over one another.)

SANTUCCI:    Somebody, somebody said there was a pinch. I'm just checking on that. (Talking over one another) Somebody (UI) I know. Yeah, that's what I heard so I'm just... I didn't hear from you on the other phone, so I'm just, in a panic, so I'm checking on everybody; I got one more to go.

| UP2194: | Oh, I'm sorry, I was, I worked uhh (chuckling), got up this morning and I was freakin' sleeping. |
|---|---|
| SANTUCCI: | I hate to bother ya but yeah, I just want to make sure. |
| UP2194: | Oh no no no, that's alright. |

77.    Based on my training and experience, the training and experience of other special agents involved in this investigation, and information I have learned during the course of this investigation, I believe that in this conversation, SANTUCCI discussed the arrest ("pinch") of an unidentified third party with UP2194. During the conversation, SANTUCCI stated that he had not heard from UP2194 ("...didn't hear from you on the other phone...) and as such, was in a "panic" since hearing of the arrest of the third party.

78.    On April 23, 2015, investigators coordinated a motor vehicle stop of TW, a known steroid and pill customer of KENYHERCZ.   During the motor vehicle stop, TW was found to have Suboxone and steroids in his possession and was arrested.   The steroids were labeled V LABS.    Investigators believe that in the above referenced conversations, SANTUCCI's referenced, to both CHICKOS and UP2194, the arrest of an unidentified individual is a reference to the TW's arrest.    After his arrest, TW informed law enforcement that he had information that police officers were involved in steroid sales/purchases. Subsequently after his arrest, TW telephoned KENYHERCZ from TW's work telephone and informed KENYHERCZ that:

> I was talking to a buddy of mine whose got a a friend that like they're on like a drug task force so people are and I don't I don't know like what towns or anything like that but just go real easy I got another buddy I'm gonna give the heads up to too um yeah things things are fucking I don't know I don't know if it has to do with that big bust that now that now they're looking for shit like that now.

79.    Based on my training and experience, I believe that TW informed KENYHERCZ that he had a law enforcement friend involved in narcotics investigations ("a friend that like

they're on like a drug task force") who was planning on making a large arrest ("big bust") and that he wanted to alert KENYHERCZ ("give the heads up to") to avoid narcotics transactions for a short period ("go easy") because the drug task force was looking at arresting steroids sellers ("they're looking for shit like that now").

## 2. SANTUCCI and FERNANDES

80.     On February 6, 2015 and February 7, 2015, Steven FERNANDES, using telephone number (860) 919-1713 and SANTUCCI, using the SANTUCCI Telephone, engaged in the following text message exchange:

| | |
|---|---|
| aFERNANDES: | 2 test enan 400, 1 deca, 1 tren enan,1 cyp, 1 sust 400, 1 d bol and 1 nolvdex. |
| FERNANDES: | When do u think |
| SANTUCCI: | May not be till wen |
| FERNANDES: | Ok |

81.     Based on my training and experience, the training and experience of other special agents involved in this investigation, and information I have learned during the course of this investigation, I believe that in this text message exchange, FERNANDES placed an order for steroids, specifically two 400 milligram bottles of Testosterone Enanthate, one bottle of Deca Durabolin, one bottle of Trenbolone Enanthate, one bottle of Testosterone Cypionate, one 400 milligram bottle  of Sustanon, one bottle of Dianabol and one bottle of Nolvadex, with SANTUCCI ("2 test enan 400, 1 deca, 1 tren enan,1 cyp, 1 sust 400, 1 d bol and 1 nolvdex."). FERNANDES then asked when SANTUCCI will have the steroid order ready for FERNANDES ("When do u think").  SANTUCCI advised FERNANDES that he may not have his steroid order ready until Wednesday ("May not be till wen") and FERNANDES confirmed that it was understood ("Ok").

82.     On February 12, 2015, Steven FERNANDES, using telephone number (860) 919-1713 and SANTUCCI, using the SANTUCCI Telephone, engaged in the following text message exchange:

aFERNANDES:     Can u add 1botle of test enen 400 2 that orrdr

SANTUCCI:     K

FERNANDES:     Thanks we still on 4 noon

SANTUCCI:     Yes

FERNANDES:     Perfect

SANTUCCI:     Be 15min late

FERNANDES:     I will b here

83.     Based on my training and experience, the training and experience of other special agents involved in this investigation, and information I have learned during the course of this investigation, I believe that in this conversation, the training and experience of of other special agents involved in this investigation, and information I have learned during the course of this investigation, I believe that in this text message exchange, FERNANDES adds to the original steroid he placed with SANTUCCI on February 6, 2015 another 400 milligram bottle of Testosterone Enanthate ("Can u add 1botle of test enen 400 2 that orrdr") and SANTUCCI confirmed that the additional steroid order was understood ("K"). FERNANDES then asked SANTUCCI if the steroid order would still be ready at noon ("Thanks we still on 4 noon") and SANTUCCI confirmed that the steroid order would be ready ("Yes").

84.     On February 22, 2015 and February 23, 2015, Steven FERNANDES, using telephone number (860) 919-1713 and SANTUCCI, using the SANTUCCI Telephone, engaged in the following text message exchange:

36

FERNANDES:      q Revised ordr got bumbarded 38 pieces of gear 7 botls sust 400 5 botls
                deca 1 botl premob 1 botl test enan 250 4 botls tren enant 3 botls dbol 20

FERNANDES:      q shit let me no when i can have it please

SANTUCCI:       Tomorrow or wen

SANTUCCI:       Meant thur

FERNANDES:      K

FERNANDES:      Do u have any 22 by 1and 1/2 pins layin around

FERNANDES:      Can u add 1 btl tren enant 2that ordr please 4 thurs thanks.

FERNANDES:      Also please add another botl winny 10s

FERNANDES:      Yor gona kill me add 1btl deca, 1 btl tren acet and 1 botl sust 400. Sorry
                nomor till next wek shoud b a total of 43 pieces

SANTUCCI:       No pins

FERNANDES:      Ok u hav the enyire ordr

SANTUCCI:       Yes

       85.     Based on my training and experience, the training and experience of other special

agents involved in this investigation, and information I have learned during the course of this

investigation, I believe that in this text message exchange, FERNANDES changed the steroid

order he placed with SANTUCCI on February 12, 2015 to 38 total sterioid units, seven 400

miligram bottles of Sustanon, five bottles of Deca Durabolin, one bottle of Primobolan, one 250

miligram bottle of Testosterone Enthante, four bottles of Trenbolone Enathate, and three 20

miligram bottles of Dianabol, ("q Revised ordr got bumbarded 38 pieces of gear 7 botls sust 400

5 botls, deca 1 botl premob 1 botl test enan 250 4 botls tren enant 3 botls dbol 20") and asked

SANTUCCI when the steroid order would be ready ("q shit let me no when i can have it

please"). SANTUCCI advised FERNANDES that the steroid order would be ready on Thursday

("Meant thur"). FERNANDES then asked SANTUCCI if he had any twenty-two gauge, one and a half inch needles available ("Do u have any 22 by 1and 1/2 pins layin around") and FERNANDES added additional steroids, one bottle of Trenbolone Enathate and one bottle of Winstrol, to his order placed earlier in the day ("Can u add 1 btl tren enant 2that ordr please 4 thurs thanks." and "Also please add another botl winny 10s"). Again FERNANDES added to his steroid order, one bottle of Deca Durabolin, one bottle of Trenbolone Acetate, and one 400 miligram bottle of Sustanon, to complete his order of 43 total sterioid units ("Yor gona kill me add 1btl deca, 1 btl tren acet and 1 botl sust 400. Sorry nomor till next wek shoud b a total of 43 pieces"). SANTUCCI then told FERNANDES that he did not have any needles available ("No pins"). FERNANDES asked SANTUCCI if he had the entire order of steroids he had placed ("Ok u hav the enyire ordr") and SANTUCCI confirmed that he received FERNANDES' steroid order ("Yes").

86.     On April 1, 2015 and April 2, Steven FERNANDES, using telephone number (860) 919-1713, and SANTUCCI, using the SANTUCCI Telephone, engaged in the following text message exchange:

FERNANDES:     1 botl sust 400, 2 botls deca, 1 botl anadrol 20, 1 botl winny 20 and 1 botl clen .2 for now tell me 2morow please my guy goin on vacation at 6 pm 2morow nit

FERNANDES:     Add 4 botls winny oral 10mg please

FERNANDES:     Add i botl test enant 250 and 1 botl dbol 20

SANTUCCI:       (April 2, 2015) Yes.

87.     Based on my training and experience, the training and experience of other special agents involved in this investigation, and information I have learned during the course of this investigation, I believe that in this conversation, the training and experience of other special

agents involved in this investigation, and information I have learned during the course of this investigation, I believe that in this text message exchange, which was obtained pursuant to a search warrant, FERNANDES was placing an order for steroids, specifically quantities of Sustanon, Deca Durabolin, Anadrol, Winstrol and Clenbuterol ("1 botl sust 400, 2 botls deca, 1 botl anadrol 20, 1 botl winny 20 and 1 botl clen"). FERNANDES then added to his order with additional Winstrol and by adding an order for quantities of Testosterone Enanthate and Dianabol ("Add 4 botls winny oral 10mg please" and "Add i botl test enant 250 and 1 botl dbol 20"). SANTUCCI then responded on April 2, 2015, "Yes," which I believe is an acknowledgement of the order.

88.     Based on my training and experience and the quantity and frequency of FERNANDES' steroids purchases, I believe that FERNANDES is purchasing steroids from SANTUCCI for the purpose of redistribution.

### 3.  SANTUCCI and KENYHERCZ

89.     On April 8, 2015, KENYHERCZ, utilizing the KENYHERCZ Telephone, and SANTUCCI using the SANTUCCI Telephone, engaged in the following WhatsApp message exchange:

SANTUCCI:       No order?

KENYHERCZ:    Sorry typed it but never sent it. 5 sust 8 tren 2 eq 2 dec 4 cyp

SANTUCCI:       K

KENYHERCZ:    When do you think it could have that order

SANTUCCI:       I'm glad I asked about it.  Wish you got it out on time but working
                doubles.  Best is fri night

90.     Based on my training and experience, the training and experience of other special agents involved in this investigation, and information I have learned during the course of this

investigation, I believe that in this conversation, I believe SANTUCCI asked if KENYHERCZ wanted to place a steroid order ("No order?"). KENYHERCZ replied that he typed out the WhatsApp message but did not send it to SANTUCCI. KENYHERCZ's steroid order consisted of five bottles of Testosterone Sustanon, eight bottles of Trenbolone, two bottles of Equipoise, two bottles of Deca Durabolin and four bottles of Testosterone Cypionate ("Sorry typed it but never sent it. 5 sust 8 tren 2 eq 2 dec 4 cyp"). SANTUCCI confirmed that he received KENYHERCZ's steroid order. SANTUCCI could have Kenyercz's steroid order by Friday but he was working two shifts a day at the Newtown Police Department ("I'm glad I asked about it. Wish you got it out on time but working doubles. Best is fri night.").

91.     WhatsApp messages intercepted over the KENYHERCZ Telephone, revealed that on April 18, 2015 and April 19, 2015, KENYHERCZ, utilizing the KENYHERCZ Telephone, and SANTUCCI using the SANTUCCI Telephone, engaged in the following WhatsApp message exchange:

KENYHERCZ:     Hey have you talked to my cousin?

SANTUCCI:      Nope. Weird you ask. Cause I text him yesterday and no response. Over
               a month since I've heard anything. He ok?

KENYHERCZ:     He said the exact same thing he said he has been trying to get a hold of

               you for a month and nothing. Do u guys have the right contact info

SANTUCCI:      Yeah. Weird

KENYHERCZ:     You both sent me the exact same message

SANTUCCI:      I'll try again.

SANTUCCI:      You ok?

KENYHERCZ:     Yes and no. I got hurt and work. Dave hit me with a slab of asphalt and
               broke 6 small bones in my foot. I went to the hospital and I had to tell
               them I got hurt at work. He doesn't have comp and didn't put me on the

|  | books so he hasn't paid me. I have to go to the labor board and sew him |
|---|---|
| KENYHERCZ: | He wont even return my calls he still hasnt paid me for that order in full from december. He owes me for plowing and 2 weeks pay |
| SANTUCCI: | Are you in a cast? |
| KENYHERCZ: | They are all smaller metatarsal breaks like mid toe and slightly higher so no cast but its wrapped and im using crutches 90% of the time |
| SANTUCCI: | Send me a number for him again |
| KENYHERCZ: | 2036501181 |
| SANTUCCI: | Thanks |
| KENYHERCZ: | You got it |
| KENYHERCZ: | I have to try and get something together and get that order. I have other orders coming in but until my foot heals I cant work. Im in that court drug program so ive been clean and get tested regularly. I have to get back in the zone |
| SANTUCCI: | I worry about you.   The people you deal with are shit heads and always screw us |
| KENYHERCZ: | Honestly the big one is my old boss he'll get 20 bottles or more and fucking pays whenever he feels like it. The other problem is people pull the shit all the time of place like a 6 bottle order then when I get them only buying 3 |
| KENYHERCZ: | Im only dealing with 5 people now the people I dont have issues with |
| KENYHERCZ: | Ray said his phone is on. He is another one lol bc I set u 2 up he was supposed to put 5$ a side per bottle and give me a little kick back ive got.nothing |
| SANTUCCI: | I'll try him in a bit.  Out right now. |
| KENYHERCZ: | Have him call my store and ask for me between  2 & 4. Ask for me about cigars. (203)375-2816 |
| KENYHERCZ: | That was from him |
| SANTUCCI: | K |

KENYHERCZ:        Thanks brother

KENYHERCZ:        Hey if there is something we can work out can we please. Im down and
                  out with my foot for another week but I have that 50 bottle order coming
                  again in a week and this order is already spoken for. The only thing I need
                  not on the order is a bottle of 400. As we were talking earlier I got a text
                  from Dave he will pay me he must have gotten a call from the labor board.
                  I just need a small break to get me rolling again. Even work with p and s
                  starts in a week and a half im just in a tough spot

SANTUCCI:         I'll try and thing of something.  I'll get back to later.

SANTUCCI:         What are we trying to make a deal on first?   That last $600 order?

KENYHERCZ:        Yeah

SANTUCCI:         Can you set up pick up and delivery at same place same time?   This way
                  you can grab money and then pick it up from me.    I'll accept cash or
                  product.

SANTUCCI:         Need you to send me that order again.

KENYHERCZ:        I would be able to do that with the 50 bottle order however 600 dollar
                  order is going to like 4 different people. As far as product you accept it's
                  the same things we've dealt with in the past for example some Addies?

SANTUCCI:         I'll accept 600 worth of anything

KENYHERCZ:        Laughing my ass off how about blowjobs for my gay brother

SANTUCCI:         Jackass. Ha

KENYHERCZ:        I dont need much time I have everyone lined up. I would just need to do a
                  little running but these are my best guys no waiting they will give me cod

SANTUCCI:         What was that order again?  I had it all made but started breaking it up
                  cause you disappeared for a week

KENYHERCZ:        6 sust 6 tren 3 eq 3 dec 4 cyp. 1 of the guys can bring me a little cash
                  tonight he needs 1 var and hcg too.

SANTUCCI:         1) it will have to be tomorrow. 2) that's $700. 3) there no way I can give
                  you stuff without getting paid. I'll get burned.

KENYHERCZ:        (April 19, 2015) I know I have asked you to trust me in the past but I was
                  always battling the pills and dealing w ass holes but I promise you im

| | |
|---|---|
| | clean and getting tested by the court. I eliminated a lot of people. Tomorrow being Sunday i can run around and drop things off. Someone just ordered 2 more 400 and a bottle of win |
| SANTUCCI: | Yeah you don't have my trust. |
| SANTUCCI: | You said the order was for 4 different people.   Tell me what the 4 orders are and I'll sell them to you one at a time.  This way I don't have to worry about getting burnt on whole order at once. |
| KENYHERCZ: | Alright fair enough first order is 3 tren 1 test 400 and 1 eq. If I can grab that first.. ill use the profit to grab more of the order |
| SANTUCCI: | Ok |
| KENYHERCZ: | Your the man. After this court program im taking the job in Tennessee. I have to break this bullshit cycle ive been in for years. My life is literally the definition of insanity |
| KENYHERCZ: | What time can I see u tomorrow |
| SANTUCCI: | As early as noon |
| KENYHERCZ: | You're the best thank u |

92.     Based on my training and experience, the training and experience of other special agents involved in this investigation, and information I have learned during the course of this investigation, I believe that in this WhatsApp message conversation, KENYHERCZ asked SANTUCCI if he had talked to his relative, a Police Commissioner RM ("Hey have you talked to my cousin?") and SANTUCCI responded that he had not spoken to RM ("Nope.  Weird you ask. Cause I text him yesterday and no response.   Over a month since I've heard anything.   He ok?") KENYHERCZ explained to SANTUCCI that he injured his foot working for DH, DH had not paid him for the work he completed over the winter and KENYHERCZ wanted to bring a complaint against DH for the back pay to the Connecticut Department of Labor  ("Yes and no. I got hurt and work. Dave hit me with a slab of asphalt and broke 6 small bones in my foot. I went to the hospital and I had to tell them I got hurt at work. He doesn't have comp and didn't put me

on the books so he hasn't paid me. I have to go to the labor board and sew him"). SANTUCCI

requested that KENYHERCZ send the number for his relative, RM, again ("Send me a number

for him again") and KENYHERCZ responded with RM's cell phone number ("2036501181").

KENYHERCZ continued by explaining that he wanted to continue ordering steroid products

through SANTUCCI and to receive the order of steroids he had already placed with him.

KENYHERCZ could not work because of his foot injury but was staying off drugs due to the

court ordered program he was participating in ("I have to try and get something together and get

that order. I have other orders coming in but until my foot heals I cant work. Im in that court

drug program so ive been clean and get tested regularly. I have to get back in the zone").

SANTUCCI told KENYHERCZ that he was concerned about the people to whom

KENYHERCZ sold the steroids because they were not reliable ("I worry about you.   The people

you deal with are shit heads and always screw us").   KENYHERCZ responded that the steroid

customer that gave him the biggest problems was his boss, DH. DH would order twenty bottles

of steroids and not pay KENYHERCZ.   KENYHERCZ continued that some customers order six

bottles of steroids and then only purchase three but that he is only working with five customers

now to avoid that problem  ("Honestly the big one is my old boss he'll get 20 bottles or more and

fucking pays whenever he feels like it. The other problem is people pull the shit all the time of

place like a 6 bottle order then when I get them only buying 3" and "Im only dealing with 5

people now the people I dont have issues with").  KENYHERCZ further explained that RM had

turned on his cell phone and RM was another customer that gave him issues.  RM promised to

give KENYHERCZ five dollars for ever bottle of steroids he sold because KENYHERCZ

introduced him to SANTUCCI, however KENYHERCZ indicated he never received any money

from RM ("Ray said his phone is on. He is another one lol bc I set u 2 up he was supposed to put

5$ a side per bottle and give me a little kick back ive got.nothing"). SANTUCCI told KENYHERCZ that he would call RM later ("I'll try him in a bit. Out right now.") and KENYHERCZ instructed SANTUCCI to call RM at his store, Martin's News & Cigarrett ("Have him call my store and ask for me between 2 & 4. Ask for me about cigars. (203)375-2816" and "That was from him"). Based on pen register and call detail records analysis, at approximately 3:17 p.m. on April 18, 2015, SANTUCCI, using the SANTUCCI Telephone, placed a call to RM at 203-XXX-2816.

93.    KENYHERCZ further explained that he wanted to work out an arrangement with SANTUCCI because KENYHERCZ's customer would be placing his regular order of fifty bottles of steroids again and that he needed to add one 400-milligram bottle of Testosterone to that order. Additionally, KENYHERCZ referenced a text message DH had sent to KENYHERCZ indicating that he would pay KENYHERCZ ("Hey if there is something we can work out can we please. Im down and out with my foot for another week but I have that 50 bottle order coming again in a week and this order is already spoken for. The only thing I need not on the order is a bottle of 400. As we were talking earlier I got a text from Dave he will pay me he must have gotten a call from the labor board. I just need a small break to get me rolling again. Even work with p and s starts in a week and a half im just in a tough spot").[1] SANTUCCI confirmed with KENYHERCZ that Kenyehrcz wanted to make an arrangement for the previous $600.00 order he had placed with SANTUCCI. SANTUCCI asked if KENYHERCZ could meet SANTUCCI and his customer at the same time and location so that KENYHERCZ could be paid by his customer, provide the cash to SANTUCCI, and SANTUCCI could give KENYHERCZ his steroid order with no delay ("Can you set up pick up and delivery at same place same time?

---

[1] On April 18, 2015, in KENYHERCZ Telephone Session 16221, DH, utilizing telephone number (203) XXX-6969 sent a text message to KENYHERCZ, who was utilizing the KENYHERCZ Telephone, and engages in the following conversation: "I'll meet up with you this week and I'll pay you."

This way you can grab money and then pick it up from me.").[2] SANTUCCI further indicated that he would accept money or drugs as a form of payment for the steroid order ("I'll accept cash or product"). KENYHERCZ indicated that he would be able to meet SANTUCCI at the same place and time as his customer for the order of 50 bottles of steroids but that the $600.00 order of steroids was for four different customers ("I would be able to do that with the 50 bottle order however 600 dollar order is going to like 4 different people."). He continued by asking if he could give SANTUCCI Adderall pills as a form of payment similarly to a previous transaction ("As far as product you accept it's the same things we've dealt with in the past for example some Addies?"). SANTUCCI confirmed that he would accept Adderall pills as a form of payment for the steroid order ("I'll accept 600 worth of anything") and asked KENYHERCZ for his steroid order again because since they had not spoken in a week, SANTUCCI made the order but sold it to other distributors ("What was that order again?   I had it all made but started breaking it up cause you disappeared for a week").   KENYHERCZ placed the order for six bottles of Sustanon, six bottles of Trenbolone Enanthate, three bottles of Equipoise, three bottles of Deca Durabolin, four bottles of Testosterone Cypionate, and added one bottle of Anavar and one bottle of Human Chorionic Gonadotropin ("6 sust 6 tren 3 eq 3 dec 4 cyp. 1 of the guys can bring me a little cash tonight he needs 1 var and hcg too.") SANTUCCI indicated that he would have the steroid order ready for KENYHERCZ the following day for $700.00 but that he needed payment prior to giving KENYHERCZ the steroid order because he trusted neither KENYHERCZ's customers nor KENYHERCZ ("1) it will have to be tomorrow. 2) that's $700. 3) there no way I can give you stuff without getting paid. I'll get burned."). KENYHERCZ asked SANTUCCI to trust him because he was no longer taking any drugs and added two 400 milligram bottles of Testosterone

---

[2] On March 30, 2015 investigators conducted surveillance on a meeting between CW-1 and BERTANZA, as well as KENYHERCZ and SANTUCCI at the Griffin Hospital parking lot.

and a bottle of Winstrol to the steroid order ("I know I have asked you to trust me in the past but I was always battling the pills and dealing w ass holes but I promise you im clean and getting tested by the court. I eliminated a lot of people. Tomorrow being Sunday i can run around and drop things off. Someone just ordered 2 more 400 and a bottle of win"). SANTUCCI reiterated to Keyhercz that he did not trust him to place a large order but would sell KENYHERCZ one order at a time ("Yeah you don't have my trust." and "You said the order was for 4 different people. Tell me what the 4 orders are and I'll sell them to you one at a time. This way I don't have to worry about getting burnt on whole order at once."). KENYHERCZ agreed to place one order of three bottles of Trenbolone Enanthate, one 400 miligram bottle of Testosterone and one bottle of Equipoise ("Alright fair enough first order is 3 tren 1 test 400 and 1 eq. If I can grab that first.. ill use the profit to grab more of the order"). SANTUCCI and KENYHERCZ agreed that they could meet at approximately noon on the following day ("As early as noon").

94.     WhatsApp messages, intercepted over the KENYHERCZ Telephone, revealed that on April 20, 2015, KENYHERCZ, utilizing the KENYHERCZ Telephone, and SANTUCCI using the SANTUCCI Telephone, engaged in the following WhatsApp message exchange:

| | |
|---|---|
| KENYHERCZ: | All set. Next round 2 400 2 cyp 2 tren 1 var |
| SANTUCCI: | Thinking like 5 Will you be around? |
| KENYHERCZ: | Yeah 5 will work |
| SANTUCCI: | Cool. I'll go to hospital |
| KENYHERCZ: | Sounds good |
| KENYHERCZ: | Anyway those tren can just be ace |
| SANTUCCI: | I already made them.   With plastic tips and pros stock labels. |
| SANTUCCI: | Need ace only? |

| | |
|---|---|
| KENYHERCZ: | Do you have only ace labels. He takes the blend now he wont know the difference |
| SANTUCCI: | I'll just make ace.   I'll still make it by 5. |
| KENYHERCZ: | Cool |
| KENYHERCZ: | Still on for 5 |
| SANTUCCI: | On way.   3-4 min behind cause of rain traffic |
| KENYHERCZ: | No problem see u in a few |
| SANTUCCI: | Off exit |
| SANTUCCI: | Here |
| KENYHERCZ: | B right there |

95.     Based on my training and experience, the training and experience of other special agents involved in this investigation, and information I have learned during the course of this investigation, I believe that in this conversation, KENYHERCZ and SANTUCCI arranged to meet one another to complete a drug transaction.

96.     On April 20, 2015, surveillance was established in the area of the Griffin Hospital parking lot in Derby, Connecticut. At approximately 5:00 p.m. surveillance observed SANTUCCI's Toyota Prius traveling on Seymour Avenue, Derby, Connecticut towards the Griffin Hospital parking lot. Surveillance then observed KENYHERCZ's Chevrolet S-10 traveling towards the Griffin Hospital parking lot and observed KENYHERCZ's vehicle within the parking lot. A review of surveillance video shows a hand to hand exchange between the operator of SANTUCCI's vehicle and the operator of KENYHERCZ's vehicle.

97.     Based on the above referenced telephone conversation and surveillance, investigators believe that KENYERCZ and SANTUCCI conducted a drug transaction in which KENYHERCZ purchased steroids labeled PRO STOCK.

4. **KENYHERCZ and BERTANZA**

98.     On March 5, 2015, in KENYHERCZ Session 9, Alex KENYHERCZ, utilizing the Target Telephone telephoned BERTANZA, who was utilizing the BERTANZA Telephone and engaged in the following conversation:

KENYHERCZ :     Yo what up?

BERTANZA:     Hey what are you all doing?

KENYHERCZ:     What do you want?

BERTANZA:     Ah, nothing man, just heading down to shovel a couple walk ways.

KENYHERCZ:     Yeah?

BERTANZA:     Just to keep them clear, yeah, what's going on?

BERTANZA:     Nothing, listen, I a, I got a , a, a, I want to know fucking like a what's the biggest order of fucking Cialis you can get and fucking and a I got a guy that might fucking, we fucking wants to fucking do a little investment. I've been, I've been selling them to him and he wants to maybe do a little investing and possibly invest in some bottles. So I just, I wanted you to fucking know, this is a serious guy so it's like you know I, I know, you know he's bringing it up for a reason. So I just figured, you know obviously, I just wanted to ring your ear about it now. I'm about to go home and go to bed, you know nothing happening right now but fucking you know see um, see, see, see what you know, what the cost would be for like a, you know, 100 bottle order and like fucking like 1,000 Cialis, you know.

KENYHERCZ:     Alright, well here's the thing, the bottles come in bottles of 10 or you can do the big bottles of 150.

BERTANZA:     Yeah, ok.

KENYHERCZ:     The other thing is, he has Cialis and he has Viagras, he has them both, and then he has what he calls a cock bomb which is a 50 milligram, 25 of each.

BERTANZA:     Alright, but a,  how many, find out how many how many he has on him, like how many he has, Imean, I

KENYHERCZ:     Let's put it this way, he has enough powder to make probably, 2,000 tabs of each.

BERTANZA:        How do you know?

KENYHERCZ:       Because I just talked to him about it last night, somebody asked me a similar question.

BERTANZA:        Really, alright, yeah, but what would the price be, you know what I'm saying, I'm like fucking, you know for a 100, you know how much is 150?

KENYHERCZ:       150, my cost is usually, you know, anywhere from $1.00 to $1.50 a piece.

BERTANZA:        So, yeah it'd be, alright cuz, alright, I'll um, I'll a, and if I fucking talk, alright, (UI) if I talk to this guy and get some cash from him, I mean could this happen over the next couple of days?

KENYHERCZ:       Yeah absolutely, absolutely.

BERTANZA:        Alright.

KENYHERCZ:       Like I said, I don't need to make a killing I just, throw me a quarter a piece, or 50 cents, or whatever and you may, I may, tell me.

BERTANZA:        We'll figure it out, I'm not worried about it, taking care of you so much, I'm just worried about, you know, like fucking, I'11 never fucking forget that shit with Steve, you know what I'm saying, fucking, making me fuck, you know what I'm saying, like fucking, you know.

KENYHERCZ:       Dude

BERTANZA:        It's it's tough for me to put my work, you know it's tough for me, you know. Unless . . .

                 (Talking over each other)

KENYHERCZ:       Listen, listen, Mark I know, I know, I know how you are, but here's the thing, if we run low, we're expecting five feet of fucking snow, the guy was trying to do me a favor by making it happen that night, we shoulda just fucking squashed the whole thing and made it for a Wednesday anyways you know, it was something that got fucked up.

BERTANZA:        I understand that.

KENYHERCZ:       On the three orders before that it was flawless, it was flawless, you know you have the habit of fucking jumping the gun and get so fucking wound up. You give yourself more stress than it's worth. If we're talking about a bottle of Cialis or two bottles of Cialis there's no way it gonna take the guy